## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RUSH H. LIMBAUGH III ESTATE,
David E. Bowers, Personal Representative,

                Plaintiff,

v.

THE RUSH LEGACY, INC., a Delaware
corporation, SMSCHAEF, LLC, a New York
limited liability company, SCOTT SCHAEFER,
a citizen of New York, and JOHN DOES I-X,

                Defendants.

_____/

## COMPLAINT FOR TRADEMARK INFRINGEMENT,
## FALSE DESIGNATION OF ORIGIN AND CYBERPIRACY UNDER
## THE LANHAM ACT AND UNAUTHORIZED PUBLICATION OF NAME AND
## LIKENESS AND CONVERSION UNDER THE LAWS OF FLORIDA

Plaintiff, Rush H. Limbaugh III Estate, through David E. Bowers as Personal

Representative (the "Estate"), sues Defendants The Rush Limbaugh Legacy, Inc., Smschaef,

LLC, Scott Schaefer, individually, and John Does I – X (collectively, "Defendants"), for

violations of the Act of July 5, 1946, ch. 540, Pub. L. 79-489, 60 Stat. 427, *et seq.*, as amended

(the "Lanham Act"), codified at 15 U.S.C. § 1051, *et seq.*, for Unauthorized Publication of

Name and Likeness pursuant to § 540.08, Fla. Stat. (2022), and for Conversion pursuant to

the common law and Fla. Stat. 2.01, and alleges as follows:

### NATURE OF THE ACTION

1.    The Estate files this Complaint against Defendants for Trademark

Infringement, False Designation of Origin, Cyberpiracy, Unauthorized Publication of Name and

Likeness and Conversion, due to Defendants' willful infringement of the Estate's EIB®, and

"Golden EIB Microphone" image trademarks; for Cyberpiracy in connection with their use of the domain name www.eiblegacy.com; and in connection with their use of the domain name www.eibnet.com and possible use of www.eibnet.us; for Conversion as to the EIBNet domains; and for the unauthorized publication of Rush Limbaugh's name and likeness to promote and sell products and services.  All of these claims arise in connection with the Defendants' acts under the banner of "EIBLegacy," including the creation and use of a website called "EIBLegacy," located at the associated URL http://www.eiblegacy.com., and Defendants' various "EIBLegacy" accounts on third-party websites, including Substack, OpenSea, Twitter Telegram, Truth Social, Gab, Parler, and Gettr, which Defendants use to promote the sale, offer for sale, advertising, and distribution of Defendants' own subscription newsletter on Substack, social media accounts, and Non-Fungible Tokens ("NFTs") on OpenSea.

2.      Defendants' "EIBLegacy" website and accounts create a likelihood of confusion and deceive the public and potential purchasers as to the Defendants' affiliation with, or sponsorship and approval by, the Estate.  This occurs through the unauthorized use of the Estate's trademarks and other intellectual property.  Defendants' offending "EIBLegacy" website and "EIBLegacy" accounts also, without authorization, publish the name and likeness of Rush Limbaugh in directly promoting and furthering the commercial objectives of Defendants' "EIBLegacy."  These acts have damaged the Plaintiff and are damaging to the goodwill and legacy of the Plaintiff and Mr. Limbaugh.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the claims arising under the Lanham Act, pursuant to 28 U.S.C. § 1338(a).  This Court has original jurisdiction over the related

state law claims for Unauthorized Publication of Name and Likeness and Conversion, pursuant to 28 U.S.C. § 1338(b), or 28 U.S.C. § 1367, since the claims are so related to the Federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4.     This Court has personal jurisdiction over Defendants, pursuant to § 48.193(1)(a)(1) and (2), Fla. Stat. by virtue of their operating, conducting, engaging in, or carrying on a business in this State, which includes their purposely directing communications into Florida, including into this District, in connection with the unlawful activities complained of herein; and by virtue of their committing tortious acts within this State, as specifically related to the acts alleged herein.

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because the Defendants have committed acts of trademark infringement, false designation of origin, unauthorized publication of name and likeness, and conversion in this judicial district, and/or a substantial portion of the events giving rise to those claims arose in this judicial district, and because this Court has personal jurisdiction over Defendants in this District. Plaintiff may require limited discovery as to the full extent of Defendants' sales and/or distribution of infringing goods and services throughout this District.

## THE PARTIES

6.     Plaintiff Rush H. Limbaugh III Estate is a Florida estate with its Personal Representative's, David E. Bowers, principal place of business at 505 South Flagler Drive, Suite 1100, West Palm Beach, Florida 33401. Rush Limbaugh was a citizen of, and was domiciled in, Florida; residing in Palm Beach County since 1994.

7.     Defendant The Rush Legacy, Inc. is a Delaware corporation created on January 13, 2023, having an address at 8 Wind Ridge Drive, North Caldwell, New Jersey 07006.  It is related to one or more other Defendants, and involved in the activities complained of, as regards the EIBLegacy website, and associated accounts, discussed within.

8.     Defendant Smschaef, LLC is a New York limited liability company located at 16623 State Highway 97, Hancock, New York 13783.  It is the organization associated with the registration of the Internet domain www.eiblegacy.com, and, upon belief, is directly involved in the operation of EIBLegacy, and related activities, as detailed within.

9.     Defendant Scott Schaefer is a citizen of New York, residing, upon belief, in Delaware County, New York.  He is the individual associated with the registration of the Internet domain www.eiblegacy.com, and an officer, and principal member of Smschaef, LLC.  Upon belief, he is involved with The Rush Legacy, Inc., and has directly participated in, and has control over, the activities associated with EIBLegacy, as detailed within.

10.     Mr. Schaefer, including through his company, Smschaef, LLC, previously worked for Rush Limbaugh in Palm Beach County, Florida, by providing information technology services at both Mr. Limbaugh's home and his radio studio.  Following Mr. Limbaugh's death, he continued providing services, as a consultant, to ensure the correct transfer of files, servers and related matter, as Rush Limbaugh's studio and home operations were closed down.

11.     John Does I – X are presently unknown individuals or entities associated with Smschaef, LLC and/or Scott Schaefer and/or The Rush Legacy, Inc., in the unauthorized commercial activities of EIBLegacy, as detailed within.  Discovery will be required to ascertain their identities and relationships with the named Defendants, and

specific acts related to the activities of EIBLegacy, as complained of herein.

## BACKGROUND

12.    Rush Limbaugh was a famous American radio personality and host of *The Rush Limbaugh Show*, which began in 1988.  After quickly becoming the number one radio talk show in the nation, it maintained that distinction for 32 years, until Mr. Limbaugh's death in 2021; as of that time, the show was syndicated nationally on approximately 650 radio stations. Rush Limbaugh's hard work and sincerity ultimately attracted an audience of over 30 million listeners, making his the most-listened-to radio show in United States history.

13.    Rush Limbaugh was widely credited with reviving the importance of AM radio, due to the massive popularity of his program.  The winner of Five Marconi Awards, Rush Limbaugh was inducted into the Radio Hall of Fame in 1993, and the National Association of Broadcasters Hall of Fame, in 1998.  Among many honors, he was awarded the Presidential Medal of Freedom in 2020.

14.    Rush Limbaugh was also a bestselling author, with seven books reaching the *New York Times* bestsellers list.  This included an acclaimed series of American history books, geared to the younger generation, authored by him and his wife Kathryn.

15.    With the inception of *The Rush Limbaugh Show*, Mr. Limbaugh adopted the moniker "Excellence in Broadcasting" to describe his broadcast philosophy, a phrase which he incorporated into his show, and used on air repeatedly.  Eventually Mr. Limbaugh adopted the abbreviation "EIB" as a trademark, which he used to identify the origin of each broadcast.

16.    When the show partnered with major syndicator Premiere Radio Networks

(later, Premier Networks, a division of iHeartMedia) that never changed the fact that Rush Limbaugh consistently identified to his audience that they were listening to him on the EIB Network.

17.     Rush Limbaugh associated "EIB" with his commitment to the excellence of his radio program and to many related efforts and events.  He continuously made EIB an integral part of his program, and his radio persona, announcing daily that he was broadcasting on the EIB network, and was seated behind the "golden EIB microphone".   Having fun with his listeners, he always referred to his Gulfstream jet as "EIB-1."   His "EIB Cur-a-thon", broadcast annually on his program over many years, raised more than $50 million for the Leukemia and Lymphoma Society.

18.     For many years, the backdrop behind Mr. Limbaugh, for the video presentation of his radio broadcast, featured a large "EIB" emblem, and EIB was the microphone flag on his Golden EIB Microphone.  A video image from a 2020 broadcast of the Rush Limbaugh Show is shown here:



19.     The Limbaugh Estate is the owner, by assignment, of all right, title, and interest in, and to, U.S. Trademark Registration No. 4,722,584, for the service mark EIB in

International Class 38 for radio broadcasting services and in International Class 41 for radio programming services.  The EIB mark was registered on April 21, 2015, and first used in commerce on July 4, 1988.

20.    The Plaintiff's registration is valid and subsisting, and has achieved incontestable status, pursuant to 15 U.S.C. § 1065.  A copy of the Plaintiff's U.S. Registration for the EIB mark is attached hereto as Exhibit "A".

21.    The Limbaugh Estate is also the owner of the trademark rights and associated goodwill in the image of "The Golden EIB Microphone" ("Microphone Image").  This mark is shown here:



The microphone image mark is presently unregistered, though application for U.S. registration was filed on February 23, 2023, see Exhibit "B", attached.

22.    The "Golden EIB Microphone" was, and remains, a visual symbol of Rush Limbaugh's talent and the quality of his radio program.  Like EIB®, it is intimately associated with him.  Exemplifying its significance, the announcement of Mr. Limbaugh's death published by *Inside Radio* prominently displayed the image of the "Golden EIB Microphone", below the headline: "Rush Limbaugh's Voice Will Continue To Be Heard . . ." www.insideradio.com, February 18, 2021 (Exhibit "C", attached).  Similarly, in April, 2021,

*Radio Online* reported: "Premier Networks and the EIB Network have announced the launch of a new, limited original podcast series 'Rush Limbaugh: The Man Behind the Golden EIB Microphone'". *Radio Online*, April 21, 2021.

23.     Use of the EIB® and the "Golden EIB Microphone" image marks is continued by the Limbaugh Estate, which Rush Limbaugh directed to carry on his work and legacy following the medical diagnosis he received in the year prior to his passing. The Estate maintains the goodwill associated with Mr. Limbaugh and, *inter alia*, the EIB® and microphone image trademarks, including through the operation of Rush Limbaugh Radio Legacy, LLC. That entity provides Internet broadcasting services, information pertaining to Mr. Limbaugh and his legacy, and maintains and enhances the long relationship with Mr. Limbaugh's wide audience.

24.     In connection with Rush Limbaugh Radio Legacy, LLC, the Estate maintains Rush Limbaugh's faithful relationship with his audience, including through the websites www.rushlimbaugh.com and www.officialrushlimbaugh.com, and through Mr. Limbaugh's social media accounts. Through these, Mr. Limbaugh's words and broadcasts are made available to the public, without charge. This occurs in addition to the provision of scholarships and ongoing charitable efforts, as a part of Rush Limbaugh's legacy to his listeners and the American public.

25.     Rush Limbaugh's love and loyalty to his audience included his commitment to never take advantage of them. He always considered his audience members to be his extended family.

26.     In January, 2023, the Plaintiff learned that its EIB® and Microphone Image trademarks, as well as Rush Limbaugh's name and likeness, were being used by EIBLegacy

to promote unauthorized commercial activities through the website located at the URL www.EIBlegacy.com, which seeks to monetize Rush Limbaugh's legacy.  The website's pages as currently shown, are attached hereto as Exhibit "D".

27.     The Defendants are violating the Estate's rights in the EIB® and "Microphone Image" marks, and its rights in Mr. Limbaugh's name and likeness.   The home page of EIBLegacy displays the following image:



28.     "EIBLegacy" is not just the domain name, it is the business name and identity Defendants use to falsely associate their activities with Rush Limbaugh.  They use the webpages located at the subject domain, to sell goods (e.g., NFTs) and services (e.g., a subscription newsletter) directly through their unauthorized association with Mr. Limbaugh, and infringing use of the EIB® and "Microphone Image" marks.

29.     EIBLegacy intentionally and directly associates its commercial presence with Rush Limbaugh, in using EIB® and the image of the "golden EIB microphone", to sell

subscriptions to a newsletter through https://eiblegacy.substack.com, as shown in Exhibit "E Composite", attached.

30.     EIBLegacy also offers to sell non-fungible tokens (NFTs)—bearing Mr. Limbaugh's name and likeness—through "EIBLEGACY NFT COLLECTION".  This is prominently displayed by providing a link to specific NFTs and the ability to "View EIBLegacy Collection On OpenSea," located at the URL http://www.opensea.io/collection/eib-legacy.  Attached Exhibit "F Composite" further shows such goods.

31.     EIBLegacy also uses the Plaintiff's protectable rights in connection with various social media accounts associated with the website, and broadly employs, without authorization, the copyrighted expression of Rush Limbaugh, comprised in his words and thoughts from years of his radio shows.

32.     The website furthers this false association and suggestion of the Plaintiff's sponsorship or approval in stating: "EIBLegacy intends to represent Rush and his ideals in the public sphere".

33.     The website goes on to state: "As the EIBLegacy community grows, we will be offering interactions with people who worked with Rush, articles by members of the production team, as well as other related media, and much more.  Much of this content can be found nowhere else.  For those who loved and revered Rush as we did, this is the ultimate memorial for the great host."

34.     Notably, the website identifies no individual or entity responsible for, or associated with, EIBLegacy.  Furthermore, articles associated with the subscription at

www.eiblegacy.substack.com identify no author, nor any other associated individual or entity.

35.     Defendants' infringing use of the Estate's marks have occurred without the Limbaugh Estate's prior knowledge or authorization, and the use of Mr. Limbaugh's name and likeness also occurs without its authorization.

36.     Attached hereto as Exhibit "G" is a mailer which was sent out by Defendants on January 17, 2023, including into the State of Florida.  It's subject line states: "Announcing EIBLegacy, honoring the wit and wisdom of Rush Limbaugh".  The opening sentence of the mailer states: "You are receiving this email because you were once a listener of the Rush Limbaugh Show."

37.     One of the services provided to Rush Limbaugh's audience, was "Rush 24/7", an online streaming audio and video broadcast, which began in 2007.  Among other benefits, the service provided the ability to listen to Rush's program any time of the day or night on mobile applications for iPhone and Android devices.  It was promoted through the radio show and, over the course of almost 14 years, resulted in a highly valuable list of Rush Limbaugh listeners who subscribed to the service.

38.     Upon belief, the list of addressees for the mailer shown in Exhibit "G" was obtained from the Rush 24/7 subscriber list.  It is presently unknown how, and under what circumstances, the list was obtained by Defendants and the Plaintiff will require discovery on that issue for determining whether additional claims may be supported.

39.     After the presence of the EIBLegacy website became known to the Estate, its counsel sent a communication to EIBLegacy's email address on January 24, 2023, expressing the Estate's concerns over the false association and endorsement presented through the

EIBLegacy website.

40.     Before sending the communication, a phone call was made by the Estate's counsel to attorney Stan North, though it was not answered.  On January 26, 2023, a phone call was made to Scott Schaefer, though not answered.  On Sunday, January 29, 2023, a responsive voicemail was left by Mr. North.  In pertinent part, Mr. North's message said: "Mr. Slavin, my name is Stan North.  I'm an attorney representing EIBLegacy.  Your calls or questions to Scott Schaefer or others you can direct to me.  We appreciate, I understand you represent the Estate, I'm sure our people would like to cooperate and work with the Estate in the legacy of Rush going forward."  Multiple return phone calls were made to Mr. North, however, no further communication has occurred.

41.     These communications resulted in a slight change to the EIBLegacy website: buried at the very bottom of the webpage—below the copyright notice— is stated:

> "EIBLegacy, EIBLegacy.com and its affiliates as stated in our introduction is a group of people who worked for and appreciated all that Rush brought to the world in his time with us.  We are not affiliated with iHeartMedia or the Rush Limbaugh Estate."

42.     That "disclaimer" fails to negate the false association created by Defendants' use of the subject domain and the Estate's marks.  Nor does it negate the false implication of authorization, sponsorship, or endorsement by the Estate.

43.     On February 8, 2023, the Plaintiff served an Amended Complaint, in accordance with the Uniform Domain Name Dispute Resolution Policy (UDRP), adopted by the Internet Corporation for Assigned Names and Numbers (ICANN), addressed to the Defendants Smschaef, LLC and Scott Schaefer's registration and use of the domain name www.eiblegacy.com.  A copy of that Complaint is attached hereto as Exhibit "H".

44.     Following service of that Complaint, another change was effected to the EIBLegacy website: The image of the "golden EIB microphone" was altered on the site's homepage. Shown below, on the left, is the microphone image previously present on the site. On the right is the current image, which removes the EIB flag from the golden microphone image. Nevertheless, the image on the left was still used, thereafter, on the Defendants' website in connection with its unauthorized reproduction and display of various copyrighted expression of Mr. Limbaugh. Though that was subsequently changed, as well, the image on the left remains on the site's webmail page, see Exhibit "I", attached.

 

45.     On March 6, 2023, Defendants filed a Response to the Estate's Amended Complaint in the UDRP proceeding referenced in paragraph 43, above. Their Response is attached hereto as Exhibit "J".

46.     In the Response, Defendant Scott Schaefer claims ownership of the domains www.EIBnet.com and www.EIBnet.us, due to his "creation" of those domains, and because he ". . . was not asked to enter into, and was not bound by any, 'work for hire'

13

obligations and, consequently, any original content created by [him] was owned by [him]".

47.     The WHOIS pages showing the www.EIBnet.com and www.EIBnet.us domain registrations is attached as Exhibit "K".  Mr. Schaefer registered these domains on June 21, 1997 and August 17, 2016, respectively.

48.     In the Response, the Defendants also stated:

a.      Rush Limbaugh used the Internet domain name www.EIBnet.com from 1997 until his death.

b.      Beginning in August 2016, Rush Limbaugh also used the Internet domain www.EIBnet.us.

c.      These domain names were used in furtherance of Mr. Limbaugh's business.

49.     In the Response, Mr. Schaefer states that he registered the www.EIBLegacy.com domain, on the basis of his "ownership" of www.EIBnet.com and www.EIBnet.us.

50.     Defendants are currently using the domain EIBnet.com, with the EIB Legacy website, through the statement:  CONTACT US AT eiblegacy@eibnet.com.  Defendants may also be using www.eibnet.us, though discovery is required for that purpose.

51.     In the Response, Mr. Schaefer states he used the EIBLegacy domain on various social media platforms during 2022, and has admitted to reproducing, as they became available, Plaintiff's Rush Limbaugh "Quote-of-the-Day".  The Response also states that on January 12,  2023 an announcement was made that the EIBLegacy website was

active.

52.     The Defendants' Response also relates that the EIBLegacy website's use of the name and likeness of Rush Limbaugh is based on his status as a "public figure".  It further states that the picture of Rush Limbaugh on the EIBLegacy website was "obtained from a YouTube page that has no copyright or trademark citations or limitations."  The Plaintiff will require further discovery to determine whether any copyright management information associated with that work may have been removed from the photograph reproduced and/or displayed by the Defendants.

53.      The continued activities of the Defendants will cause damage to Plaintiff's rights and reputation, unless enjoined.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. §§ 1114)**
**(EIB®)**

54.     This Count alleges Trademark Infringement pursuant to 15 U.S.C. § 1114. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, above.

55.     The Estate is the owner of U.S. Trademark Registration No. 4,722,584, for the mark EIB® for radio broadcasting and radio programming.    A copy of the Registration is attached hereto as Exhibit "A".

56.     The Plaintiff's mark is distinctive.  The American public associates the mark exclusively with Rush Limbaugh, through its long, continuous, and exclusive use in commerce in connection with his radio show and related activities utilizing the mark.

57.     Despite these well-established rights, and without the Estate's authorization,

Defendants have intentionally used the mark in commerce, knowing that it is identical, or virtually indistinguishable from, Plaintiff's mark. Defendants have done so in connection with the sale, offering for sale, advertising, and distribution of goods and services through the EIBLegacy website.

58.     Defendants' use of the infringing mark is likely to confuse or deceive the public into believing, contrary to fact, that Defendants' goods and services are sponsored, licensed, or otherwise approved by, or are in some way connected to, or affiliated with, Plaintiff.

59.     Further, Defendants' use of the infringing mark is likely to cause confusion, due to, at least, to the nature of the goods and services offered by Defendants, the nature of the website used to sell them, and the marketing channels used by Defendants.

60.     Defendants' acts constitute willful trademark infringement, and have been, and continue to be, with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendants' goods and services.

61.     Unless enjoined, Defendants' infringement has caused and will continue to cause the Limbaugh Estate immediate and irreparable injury. Accordingly, the Estate is entitled to injunctive relief under 15 U.S.C. § 1116 because the irreparable injury is in an amount not yet ascertainable, and for which Plaintiff has no adequate remedy at law.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants through their infringement, and all attorney fees and costs, pursuant to 15 U.S.C. § 1117.

63.     This an exceptional case within the meaning of 15 U.S.C. § 1117(a).

16

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))
## (EIB®)

64.     This Count alleges False Designation and False Association pursuant to 15 U.S.C. § 1125 (a)(1)(A).  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and 55-58, above.

65.     Defendants have used, and continue to use in commerce, a false and misleading designation of origin concerning Defendants' goods and services.

66.     Defendants' false designation of origin is likely to cause confusion regarding the affiliation, connection, or association of Defendants' goods and services with Plaintiff, as to the origin, sponsorship, and/or approval of Defendants' products.

67.     Defendants have caused and will continue to cause their false and misleading designations of origin to enter interstate commerce.

68.     Plaintiff has been, and is likely to be, injured as a result of the Defendants' false and misleading designation of origin.

69.     By reason of Defendants' actions, Plaintiff has suffered irreparable harm.  Unless Defendants are restrained from their actions, Plaintiff will continue to be irreparably harmed.

70.     The Estate has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendants' acts are allowed to continue and is thus entitled to a preliminary and permanent injunction.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and disgorgement of, all revenues and/or profits wrongfully derived by Defendants through their infringement, and all attorney fees and costs incurred by the Estate, pursuant to 15 U.S.C. §

1117.

72.     This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT III
### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))
### ("GOLDEN EIB MICROPHONE IMAGE")

73.     This Count alleges False Designation and False Association pursuant to 15 U.S.C. § 1125 (a)(1)(A).  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and 55-58, above.

74.     The image of the golden EIB microphone is distinctive.

75.     Defendants have used, and continue to use in commerce, a false and misleading designation of origin concerning Defendants' goods and services.

76.     Defendants' false designation of origin is likely to cause confusion regarding the affiliation, connection, or association of Defendants' goods and services,  with Plaintiff, as to the origin, sponsorship, and/or approval of Defendants' goods and services.

77.     Defendants have caused and will continue to cause their false and misleading designations of origin to enter interstate commerce.

78.     Plaintiff has been, and is likely to be, injured as a result of the Defendants' false and misleading designation of origin.

79.     By reason of Defendants' actions, Plaintiff has suffered irreparable harm. Unless Defendants are restrained from their actions, Plaintiff will continue to be irreparably harmed.

80.     Plaintiff has no remedy at law that will compensate for the continued and

irreparable harm that will be caused if Defendants' acts are allowed to continue and is thus entitled to a preliminary and permanent injunction.

81.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and disgorgement of, all revenues and/or profits wrongfully derived by Defendants through their infringement, and all attorney fees and costs incurred by Plaintiff, pursuant to 15 U.S.C. § 1117.

82.    This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT IV**
**UNAUTHORIZED PUBLICATION OF**
**NAME AND LIKENESS OF RUSH LIMBAUGH**

83.    This Count alleges that the Defendants have published, without authorization, the name and likeness of Rush H. Limbaugh, III, in violation of F.S. 540.08.  Plaintiff re-alleges and incorporates paragraph 1 through 53, above.

84.    Rush H. Limbaugh, III, died on February 17, 2021.  The Plaintiff is the owner by assignment of all rights in the commercial use of Mr. Limbaugh's name and likeness, as otherwise provided for under F.S. 540.08(c).

85.    The Estate's right of publicity in the name and image of Rush Limbaugh is highly valuable throughout Florida, the United States, and the world due to the enormous goodwill developed by Mr. Limbaugh.

86.    The Defendants have willfully published, printed, and displayed, and otherwise publicly used, for purposes of trade, or for direct commercial or advertising purpose, the name, photograph and other likeness of Rush H. Limbaugh, III.

87.    These acts are directly related to the various business activities of EIBLegacy,

and Defendants have used the name and likeness of Rush Limbaugh to directly promote products and services, including the sale of NFT's and a subscription newsletter service.

88.     Neither express written or oral consent to such use was ever given by Rush H. Limbaugh, III, during the time he was alive, nor has any express written or oral consent to such use been given by the Estate of Mr. Limbaugh, or by Mr. Limbaugh's spouse, Kathryn Adams Limbaugh.

89.     The Defendants' conduct is causing damage to the commercial value of the name and likeness of Rush Limbaugh.

90.     The Plaintiff has been, and is being, damaged by the Defendants' violation, including by suffering damages in the State of Florida.

91.     The Defendants' conduct causes irreparable injury that cannot be compensated by money damages, and Plaintiff seeks an injunction to prohibit such unauthorized publication, printing, display or other public use of the name and likeness of Rush Limbaugh.

## COUNT V
## VIOLATION OF ANTI-CYBERSQUATTING PROTECTION ACT
## (15 U.S.C. § 1125(d))
## (EIBLEGACY.COM)

92.     This Count alleges Cyberpiracy, pursuant to 15 U.S.C. § 1125(d).  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, paragraphs 55-60; 74-78; and 84-90, above.

93.     The Limbaugh Estate is the exclusive owner of the EIB® mark, for use in connection with radio broadcast and radio programming services.  The mark is inherently distinctive, and exclusively associated with the Estate.

94.     Defendants have registered and used a domain name: http://eiblegacy.com,

which is confusingly similar to the Estate's mark, with a bad faith intent to profit from said registration and use.

95.    Defendants' bad faith is evidenced by, *inter alia*, the following:

(i)    Defendants possess no trademark or other intellectual property rights in the registered domain name;

(ii)    Defendants had never previously used the domain name in connection with the bona fide offering of goods or services;

(iii)    At the time of registration of the unlawful domain name, Defendants knew that it was confusingly similar to the Estate's mark;

(iv)    The EIB® mark is distinctive and possesses strength;

(v)    Defendants did not believe, or have reasonable grounds to believe, that the use of the domain name was a fair or otherwise lawful use.

96.    Defendants have registered and used the domain name: http://www.eiblegacy.com, with the intent to damage the Estate's rights in the EIB® mark, by creating a likelihood of confusion as to source, sponsorship, affiliation, and endorsement of the EIBLegacy website, and the goods and services offered in connection therewith.

97.    As a result of Defendants' conduct, the Estate has suffered, and continues to suffer, irreparable damage, and unless this Court enjoins Defendants from further commission of such acts of infringement, Plaintiff will have no adequate remedy at law.  Unless injunctive relief is granted, others will remain confused and misled.

## COUNT VI
## CONVERSION

98.    This Count alleges conversion under the common law, and Fla. Stat. 2.01.  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1

through 53, above.

99.     The Limbaugh Estate is the exclusive owner of the EIB® mark, for use in connection with radio broadcast and radio programming services.  The mark is inherently distinctive, and exclusively associated with the Estate.

100.    The domain names www.eibnet.com and www.eibnet.us were prominently used by Rush Limbaugh, as a part of the Rush Limbaugh Show, continuously, from 1997 and 2016, respectively.  Their identification to listeners of the show, as a means for them to communicate with Rush Limbaugh, was a part of their association with, "The EIB Network".

101.    Defendant Scott Schaefer has wrongfully asserted dominion over the property of the Estate, which is inconsistent with its ownership interests, and constitutes conversion.

102.    Mr. Schaefer's mere registration of those domain names, for Rush Limbaugh, did not create, and does not establish, his ownership of them.  The Estate is the rightful owner of the domain names www.eibnet.com and www.eibnet.us, and Defendant's assertion of ownership interferes with its rights.

103.    The statements contained in Exhibit J, hereto, in which Defendant Scott Schaefer wrongly seeks to justify his claim to ownership rights in these domain names, shows that a demand for transfer of the Estate's property would be futile.

**COUNT VII**
**VIOLATION OF ANTI-CYBERSQUATTING PROTECTION ACT**
**(15 U.S.C. § 1125(d))**
**(WWW.EIBNET.COM)**

104.    This Count alleges Cyberpiracy, pursuant to 15 U.S.C. § 1125(d).  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and paragraphs 55-60; 74-78; 84-90; 93-96 and 99-103, above.

105.    The Limbaugh Estate is the exclusive owner of the EIB® mark, for use in connection with radio broadcast and radio programming services.  The mark is inherently distinctive, and exclusively associated with the Estate.

106.    Defendants have used the domain name: eibnet.com, which is confusingly similar to the Estate's mark, with a bad faith intent to profit from said use.

107.    Defendants' bad faith is evidenced by, *inter alia*, the following:

(i)    Defendants possess no trademark or other intellectual property rights in the registered domain name;

(ii)    Defendants had never previously used the domain name in connection with the bona fide offering of goods or services;

(iii)    The EIB® mark is distinctive, and possesses strength;

(iv)    At the time of commencing use of the unlawful domain name, Defendants knew that it was confusingly similar to the Estate's mark;

(v)    Defendants did not believe, or have reasonable grounds to believe, that the use of the domain name was a fair or otherwise lawful use;

108.    Defendants have used the domain name eibnet.com with the intent to damage the Estate's rights in the EIB® mark, by creating a likelihood of confusion as to source, sponsorship, affiliation, and endorsement of the EIB Legacy website, and the goods and services offered in connection therewith.

109.    As a result of Defendants' conduct, the Estate has suffered, and continues to suffer, irreparable damage, and unless this Court enjoins Defendants from further commission of such acts of infringement, Plaintiff will have no adequate remedy at law.  Unless injunctive relief is granted, others will remain confused and misled.

**COUNT VIII**
**VIOLATION OF ANTI-CYBERSQUATTING PROTECTION ACT**
**(15 U.S.C. § 1125(d))**
**(WWW.EIBNET.US)**

110.     This Count alleges Cyberpiracy, pursuant to 15 U.S.C. § 1125(d).  The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and paragraphs 55-60; 74-78; 84-90; 93-96 and 99-103, above.

111.     The Limbaugh Estate is the exclusive owner of the EIB$^{®}$ mark, for use in connection with radio broadcast and radio programming services.  The mark is inherently distinctive, and exclusively associated with the Estate.

112.     Defendants may have used or, may have plans to use, the domain name www.eibnet.us, which is confusingly similar to the Estate's mark, with a bad faith intent to profit from said use.

113.     Defendants' bad faith is evidenced by, *inter alia*, the following:

(i)     Defendants possess no trademark or other intellectual property rights in the registered domain name;

(ii)     Defendants had never previously used the domain name in connection with the bona fide offering of goods or services;

(iii)     The EIB® mark is distinctive, and possesses strength;

(iv)     At the time use of the unlawful domain name, Defendants would know that it was confusingly similar to the Estate's mark;

(v)     Defendants did not believe, or have reasonable grounds to believe, that the use of the domain name would be a fair or otherwise lawful use;

114.     Defendants may have or, may plan to, use the domain name: www.eibnet.us,

with the intent to damage the Estate's rights in the EIB® mark, by creating a likelihood of confusion as to source, sponsorship, affiliation, and endorsement of the website, and the goods and services offered in connection therewith.

115.    As a result of Defendants' conduct, the Estate would suffer, and continue to suffer, irreparable damage, and unless this Court enjoins Defendants from commission of such acts of infringement, Plaintiff will have no adequate remedy at law.  Unless injunctive relief is granted, others would remain confused and misled.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court grant it the following relief:

A.    Entry of judgment that:

a.    Defendants have infringed Plaintiff's EIB® and "Golden EIB Microphone" image marks under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively; and

b.    Defendants had a bad faith intent to profit from the EIB® mark, and Defendants' use of the infringing domain name www.eiblegacy.com constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d);

c.    Defendants had a bad faith intent to profit from the EIB® mark, and Defendants' use of the infringing domain name www.eibnet.com

constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d);

d.      Plaintiff is the owner of the domain names www.eibnet.com and www.eibnet.us, and Defendant Scott Schaefer unlawfully converted the Estate's rights of ownership in those domains.

e.      The domain name registration for www.eiblegacy.com be transferred to the Plaintiff.

f.      The domain name registration for www.eibnet.com be transferred to the Plaintiff.

g.      The domain name registration for www.eibnet.us be transferred to the Plaintiff.

h.      Defendants have violated F.S. 540.08, through the unauthorized publication of the name and likeness of Rush Limbaugh;

i.      Plaintiff is entitled to actual damages due to Defendants' violation of §§ 32 and 43(a) and (d) of the Lanham Act;

j.      Plaintiff is entitled to nominal damages due to Defendants' violation of §§ 32 and 43(a) and (d) of the Lanham Act;

k.      Plaintiff is entitled to disgorgement of Defendants' profits obtained from the infringing conduct;

l.      That this is an exceptional case under 15 U.S.C. §1117, entitling Plaintiff to recover its attorneys' fees and costs in this action;

m.      Plaintiff is entitled to actual damages due to Defendants' violation of F.S. 540.08.

n.      Plaintiff is entitled to nominal damages due to Defendants' violation

of F.S. 540.08.

o.     Plaintiff is entitled to disgorgement of Defendants' profits obtained from their violation of F.S. 540.08.

B.     Entry of judgment that each Defendant and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

a.     Using either of the Plaintiff's marks in connection with the EIBLegacy website, or in connection with any other website connected to, or associated with, the EIBLegacy website;

b.     Using any trademark which consists of or incorporates EIB® or the "Golden EIB Microphone" image, or any other trademark that is confusingly similar to either of the marks, in connection with the sale, offering for sale, advertising or distribution of any goods or services;

c.     Using the marks alone, or in combination with other words, letters and/or symbols, in any manner which misleads, confuses or deceives or is likely to mislead, confuse or deceive the public;

d.     Using either the name or likeness of Rush Limbaugh in connection with the promotion, offer for sale, or sale, of any goods or services.

e.     Competing unfairly with Plaintiff or otherwise injuring Plaintiff's reputation or right of publicity in the manner complained of herein; and

f.     Be instructed to amend their website(s) and marketing materials to conform with the foregoing paragraphs and to send corrective statements to all customers who have purchased or inquired about

Defendants' goods or services.

C.      The Court award such other and further relief as it deems appropriate.

Respectfully submitted,

McHALE & SLAVIN, P.A.

**Edward F. McHale**
Edward F. McHale (FBN: 190300)
Andrew D. Lockton (FBN: 115519)
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:      (561) 625-6575
Facsimile:      (561) 625-6572
E-mail:          litigation@mchaleslavin.com

*Attorneys for Plaintiff*